Harry L. Poling v. Commissioner.Poling v. CommissionerDocket No. 13063.United States Tax Court1948 Tax Ct. Memo LEXIS 103; 7 T.C.M. (CCH) 619; T.C.M. (RIA) 48168; August 30, 1948*103 Merrill Gilmore, Esq., and Wilbur R. Dull, Esq., 209-211 East Main St., Ottumwa, iowa, for the petitioner. William B. Springer, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined deficiencies in petitioner's income tax for the years 1943 and 1944 in the respective amounts of $4,241.68 and $3,987.66. The question presented is whether petitioner's wife, Mignon Poling, was a bona fide partner for income tax purposes in the partnership of Cramblit and Poling during the years 1942, 1943, and 1944. Findings of Fact Petitioner, Harry L. Poling, resides in Ottumwa, Iowa. His income tax returns for the years involved herein were filed with the collector of internal revenue for the district of Iowa at Des Moines, Iowa. Mignon Poling is, and at all prior times involved in this case was, the wife of petitioner. She filed separate individual income tax returns for 1942, 1943, and 1944 with the collector of internal revenue for the district of Iowa at Des Moines, Iowa. In 1910 petitioner and one William Cramblit formed a partnership under the name of Cramblit and Poling for the purpose of operating a retail*104 men's clothing store in Ottumwa. In 1927 a new partnership was formed when one Russell Swenson became a member, but the partnership continued to use the same name and style. At no time was there ever a written partnership agreement. The petitioner and Cramblit also owned real estate, a part of which is the building where the partnership of Cramblit and Poling conducted their clothing store. Mignon Poling's father, Sydney Dodge Baker, died December 22, 1927, leaving three heirs consisting of Mignon and her two brothers. In February 1929 the administrators' final account of the Sydney Dodge Baker estate showed that each of the three heirs received $9,414.77. There was real estate undisposed of consisting of a onehalf interest in a business property appraised at $20,000 and a home in Ottumwa. The home was later sold and Mignon Poling, the daughter, received $700 as her share. The shares of the two sons of Sydney Dodge Baker in the business property were sold to William Cramblit and Harry L. Poling. Mignon Poling continued to own her share. The building was rented through the taxable years involved herein, although it was partially or wholly vacant for about four years of that*105 time. Mignon Poling's share of the rental receipts up to 1942 approximated $3,600. Shortly after the distribution in the Baker estate, petitioner purchased for his wife certain securities having a total value of $5,625. The rest of the money from the personal estate, $3,789.77, petitioner deposited in his own account. He also deposited the rentals belonging to his wife and the receipts from the sale of the home in Ottumwa, the total being in excess of $8,000. At the time petitioner deposited this money to his account he was indebted in the approximate amount of $30,000 and the partnership of Cramblit and Poling was also in urgent need of capital. Petitioner's indebtedness thereafter increased and was not finally liquidated until shortly before the entry of Mignon Poling into the partnership. During the period following the economic disturbance of 1929 the petitioner used his wife's funds very largely in the promotion of the interests of the partnership. The petitioner and his wife never kept any account of their family financial relations and until the early part of 1944 Mignon Poling had no bank account of her own, nor did she write checks on her husband's account. In 1941*106 Cramblit gave his wife a 4/30ths interest in the partnership. In 1942 he gave her a second 4/30ths interest. These transfers were gifts. In February 1942 Poling directed a transfer of 4/30ths interest in the partnership to Mignon Poling and in January 1943 a second 4/30ths interest was transferred to Mignon Poling. The "investment account" of the partnership of Cramblit and Poling operating the men's retail clothing store was $30,000. The respective interests in the investment account of the partnership business before the transfer to Mrs. Cramblit were as follows: Russell Swenson5/30ths$ 5,000.00William Cramblit12-1/2/30ths12,500.00Harry L. Poling12-1/2/30ths12,500.00The capital account of Mignon Poling on the books of the partnership is as follows: DateFolioDebitsDateItemsCredits2-28-42Transferred from Mr. Poling'sInvestment Acct.4,000.001-1-42Gain2,580.661-30-43124J1,600.00Jan. 1943Balance Forward6,580.666-30-43171J980.661-14-43Transferred from Mr. Poling'sInvestment Acct.4,000.007-31-43179J1,600.001-1-43Gain9,124.001-31-44234J4,000.00Jan. 1944Balance Forward15,524.003-30-44251J1,924.001-1-44Gain8,530.408-30-44300J1,600.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J4,000.001-1-45Balance Forward16,530.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J2,930.409,600.00*107 Mignon Poling did not render any personal service to the partnership. The active working partners were Cramblit, Swenson and Poling. They were each paid a salary of $35 a week in addition to their share in the partnership income. No public announcement or publication was made that Mignon Poling was a member of the partnership and no statement to that effect was ever filed with the public authorities. Until Mrs. Poling opened her own bank account in 1944 all money received by her from the partnership was deposited by her in her husband's account and used for the general household account. The moneys received by Mrs. Poling from her father's estate, from the sale of the homestead and from the rental of the business property which petitioner deposited with his own funds and subsequently used indiscriminately for his own purposes and for the purposes of the partnership were never repaid to Mrs. Poling except by the assignment of the interest in the partnership. The Commissioner in his notice of deficiency informed the petitioner that his contention that a portion of the income for the years 1942, 1943, and 1944 from the business conducted under the name of Cramblit and Poling was*108 not taxable to petitioner but to his wife was denied. Mignon Poling became a member of the partnership of Cramblit and Poling in 1941 as a result of the investment of moneys belonging to her in said partnership and the income received by her for her proportionate share of the partnership capital is taxable to her. The money received by petitioner from his wife from 1929 to 1942 did not constitute a gift to him. It was not repaid to Mrs. Poling prior to the transfer to Mrs. Poling of an interest in the partnership. The transference of the partnership interest to Mrs. Poling was in repayment of the funds received from her. Opinion Inasmuch as we have found after hearing the testimony, observing the witness and examining the evidence, that from 1929 through 1941 petitioner received from his wife, of her own personal property, money in an amount in excess of $8,000; that prior to February 28, 1942, he had never repaid that money to her; that the money received by him was not a gift; and that in 1942 and 1943 petitioner repaid his wife by transferring an interest in the partnership having a capital value of $8,000; we do not believe that any of the cases cited to us by the Commissioner, *109 wherein for some reason the reality of a family partnership is not recognized for taxation purposes, have any application to the case at bar. The Commissioner questions the plausibility of petitioner's story. He contends that because Cramblit made a "gift" of a part of his interest to his wife at about the same time Mignon Poling acquired her interest in the partnership, therefore Mrs. Poling's interest should be looked upon with suspicion. From the testimony in the record it would seem that Mrs. Cramblit, who contributed neither of her capital nor her services to the partnership, should not be recognized as a partner for tax purposes. There is nothing, however, in the record indicating that she has ever contested a determination to this effect, if such a determination has ever been made, and at any rate the question is not before us. Mignon Poling's interest in the partnership depends upon her capital contribution and/or services to the partnership and is not affected by the rights of any other individual and the tax status of a partner. The Commissioner also complains that Mrs. Poling did not testify, although she was in the courtroom. Most of the essential facts testified to*110 by the petitioner were corroborated either by the record of the probate court or of the partnership itself. A very important uncorroborated fact, of course, was that Harry Poling had never repaid to her the money which he received from her but this testimony was also substantiated by the additional testimony that from 1929 to 1941 Poling himself was heavily in debt, running from $30,000 to $40,000 and that during all of that time Mignon had no bank depositary of her own where she could have kept the money if she had received it. Furthermore, it is worthy of observation that petitioner and his wife both voluntarily came into the courtroom at the time of the trial. This is not the conduct of any one attempting to suppress testimony. From the Court's observation of this woman and all of the evidence in the case, we are inclined to believe that Mrs. Poling has shown her complete confidence in her husband's management and would probably not know how much, if anything, about the amounts involved or the disposition which her husband made of the money. From observing the petitioner himself we are convinced that he was telling the truth and he has been corroborated sufficiently to support*111 his testimony generally. This case does not present facts similar to those in W. M. Buchanan, 20 B.T.A. 210, where the Board of Tax Appeals refused to recognize for tax purposes a partnership based upon the uncorroborated testimony of the husband. The Commissioner calls attention to the fact that no certificate of partnership was filed. Inasmuch as this was not a limited partnership, this was not necessary, although since the partnership did contain Swenson and since this man's name is not contained in the partnership name, under the Code of Iowa, 1939, Chapter 421.1, a verified statement of the actual membership of the partnership doubtless should have been filed many years ago. However, the addition of Mrs. Poling to the partnership did not occasion any filing because her surname was already in the name of the partnership. Furthermore, we do not consider the absence of promissory notes and books of account in this case between the husband and wife as significant. With the background of this case as shown by the record, if the petitioner had appeared in Court with such records, we would have been very much inclined to believe he was presenting a fabricated case. *112 In our opinion the leading case of Commissioner v. Tower, 327 U.S. 280, justifies the recognition of Mrs. Poling's interest in the partnership for tax purposes. Therein the Court says pertaining to the wife in a family partnership: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. Int. Rev. Code, §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership*113 is real within the meaning of the federal revenue laws." In this case Mrs. Poling was an inactive partner and was not expected to render either vital services or to contribute to the questions of management. In the interpartnership relationship she was substantially a limited partner and as such recognized by the law as laid down in the Tower case. It is admitted, of course, that the transference of the partnership interest to her by her husband should command close scrutiny but this we have done in this case and the facts in the record corroborating the testimony of Poling himself we feel have established the bona fides of the transfer. The partnership itself has received the benefit of Mrs. Poling's money for many years prior to her actual participation in the partnership. Poling testified that during the depression, when he himself was heavily in debt, this money was used in the partnership. He says concerning the condition of the partnership: "A. At that time we were pretty low on finances. We needed all the money, her money and my money too, and I think possibly most of the money went into the business. "Q. Just possibly? "A. Well, I think most of it did. I will state*114 it that way." Therefore, inasmuch as this partnership has operated on a capital contribution of Mrs. Poling, not only after but before her actual participation in the partnership affairs, it is our conclusion that Decision will be entered under Rule 50. *Footnotes*. Decision is as amended by Tax Court order dated September 28, 1948.↩